**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMINA FAROOQ,<br>PERSONAL REPRESENTATIVE OF<br>THE ESTATE OF NADIR FAROOQ,<br><br>   Plaintiff,<br><br> v.<br><br>MDRB CORPORATION<br>D/B/A RAMADA INN HOTEL *et al.*,<br><br>   Defendants. | Case No.: 1:06-cv-00211-RMC |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT MDRB CORPORATION**

Thomas S. Schaufelberger
Paul A. Fitzsimmons
SAUL EWING LLP
2600 Virginia Avenue, N.W.
Suite 1000 - The Watergate
Washington, D.C.  20037-1922

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| TABLE OF AUTHORITIES | | iii |
| I. | FURTHER STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE | 2 |
| II. | ARGUMENT | 2 |
| | A. MDRB Had No Legal Duty To Foresee Criminal Activity At The "Private Party" For Which Defendant John Doe Had Booked The Reception Room In Question | 2 |
| | B. Even Assuming *Arguendo* A Legal Obligation On MDRB's Part To Supervise Defendant Richard Roe Security, Plaintiff Has No Evidence—Either As To The Applicable Standards Of Care Or Any Supposed Breaches Thereof—Concerning Richard Roe Security's Own Work Or MDRB's Supervision Thereof | 7 |
| III. | CONCLUSION | 11 |

**TABLE OF AUTHORITIES**

**CASES**
*Bailey v. District of Columbia*, 668 A.2d 817 (D.C. 1995) ........................................................ 2, 5
*Brown v. Argenbright Security, Inc.*, 782 A.2d 752 (D.C. 2001) .................................................. 10
*District of Columbia v. Arnold & Porter*, 756 A.2d 427 (D.C. 2000) ............................................ 8
*Edwards v. Okie Dokie, Inc.*, Case No. 05-547 (D.D.C. February 6, 2007) ............................... 8, 9
*Greene v. Dalton*, 334 U.S.App.D.C. 92, 164 F.3d 671 (D.C. Cir. 1999).................................... 10
*Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906 (D.C. 2001) ........ 7, 8, 9
*King v. Pagliaro Bros. Stone Co.*, 703 A.2d 1232 (D.C. 1997)....................................................... 9
*Levy v. Schnabel Foundation Co.*, 584 A.2d 1251 (D.C. 1991) ...................................................... 7
*Parker v. Grand Hyatt Hotel*, 124 F.Supp.2d 79 (D.D.C. 2000) ..................................................... 8
*Predzin v. DC Arena Limited Partnership*, Case No. 02-9585 (D.D.C. October 7, 2003)....... 8, 10
*Ryczek v. Guest Services, Inc.*, 877 F.Supp. 754 (D.D.C. 1995)..................................................... 4
*Sokos v. Hilton Hotels Corp.*, 283 F.Supp.2d 42 (D.D.C. 2003) .................................................. 11
*Tarpeh-Doe v. United States*, 307 U.S.App.D.C. 253, 28 F.3d 120 (D.C. Cir. 1994)................... 4

**OTHER AUTHORITIES**
Restatement (Second) of Agency § 213 (1957) ........................................................................... 3, 4

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT MDRB CORPORATION**

Defendant MDRB Corporation ("MDRB"), by counsel, submits this reply memorandum in support of its Motion for Summary Judgment.  MDRB's Motion should be granted because the criminal act by a third party who caused the death of Nadir Farooq ("Farooq" or the "Decedent") was, as a matter of law, not foreseeable to MDRB and because, as to MDRB, there was as a matter of law no actionable "negligent supervision" of the acts of the security personnel—Defendant Richard Roe Security—apparently hired by the leasor, Defendant John Doe.  Accordingly, summary judgment should be granted in MDRB's favor and against Amina Farooq (the "Plaintiff"), Personal Representative of the Estate of Nadir Farooq.

The stabbing that took the life of the Decedent, perpetrated by an individual having no affiliation with MDRB, occurred on the premises of a Ramada Limited hotel (the "Hotel"), located in the District and previously owned and operated by MDRB.

While Plaintiff contends that MDRB owed tort duties to protect Farooq against that criminal act, that it failed to do so, and that that failure renders MDRB legally responsible for Farooq's resultant death, in fact District of Columbia law does not impose liability on MDRB in the circumstances presented.  As a matter of law, MDRB did not have any duty to protect the Decedent against this unforeseeable attack by a third person upon him.  The undisputed material facts establish that, on the night in question, MDRB had no reason to know that anyone on its premises carried a knife or intended to use any type of weapon to harm the Decedent, and MDRB neither knew nor could have known that an assailant would suddenly stab the Decedent.  Thus, Plaintiff cannot establish foreseeability, much less "heightened foreseeability," as would be

required in this setting.  Moreover, MDRB did not breach any duty to supervise the security personnel hired by its leasor, Defendant John Doe.

Accordingly, MDRB is entitled to summary judgment.

I. **FURTHER STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

In her Response Brief, Plaintiff now asserts:  "What this case is about is the fact that the security provided by defendant Ramada was negligent under the circumstances."  (Plaintiff's Amended Memorandum Of Points And Authorities ("Opp.Mem.") at 4.)  However, Plaintiff has presented and can present no evidence that, before the event at issue began, MDRB knew that any "security" would be in place for what had been represented to MDRB would be a "Private Party."  MDRB's sworn testimony is exactly to the contrary:  it did not know that any "security" would be present at the event.  (*See* September 14, 2006 Certificate of Deepak Bhatnagar ("Bhatnagar Cert."), attached as "Exhibit 1" to MDRB's opening Memorandum In Support Of Motion For Summary Judgment, at ¶ 5; May 21, 2007 Certificate of Stanley Travers ("Travers Cert.," attached hereto as "Exhibit 1") at ¶ 5.)  *A fortiori*, MDRB did not "provide[]" (Opp.Mem. at 4) security for this event.

II. **ARGUMENT**

A. **MDRB Had No Legal Duty To Foresee Criminal Activity At The "Private Party" For Which Defendant John Doe Had Booked The Reception Room In Question**

Plaintiff's brief implicitly concedes an important point:  namely, that at no time before the holding of this event "should[ MDRB] have had an 'increased awareness' that some third party's unlawful use of a [knife] would cause [the Decedent]'s injuries."  *Bailey v. District of Columbia*, 668 A.2d 817, 819 (D.C. 1995) ("*Bailey*").  In this same regard, Plaintiff apparently abandons the assertions in her Complaint that the criminal act which took her son's life was foreseeable based

2

on notions that MDRB knew or should have known of certain generic information: (1) that the Hotel was located in a "high crime" area; (2) that violent crimes had occurred in and about other premises where certain dances were attended by young people; (3) that sale to and consumption by young people of alcoholic beverages often lead to violent action; and (4) that young people in high crime communities carry concealed weapons. (Complaint ¶ 11.) Relatedly, in response to MDRB's summary judgment motion and supporting papers, Plaintiff has not asserted that MDRB had any specific reason to know at the time the event was held that anyone at the Hotel was dangerous, carried a weapon, or intended to harm anyone else at the Hotel, that MDRB had any knowledge of any threatened or impending physical attack upon the Decedent, or that there had never been a criminal act of that nature at the Hotel while MDRB owned and operated it. In fact, MDRB lacked any knowledge or information that could have put it on notice of any impending criminal attack by Travis Littlejohn upon Farooq, which fact Plaintiff essentially concedes by not contesting the testimony thereon presented through MDRB's opening brief on this Motion.

Rather than contesting foreseeability points, Plaintiff now argues that "this is not a foreseeability case" because "[t]he question of whether or not security was needed was answered by the fact that security was present." (Opp.Mem. at 4.) "What this case is about," Plaintiff now maintains, "is the fact that the security provided by defendant Ramada was negligent under the circumstances." (*Id*.) Specifically, Plaintiff maintains that her claim is based upon "negligent supervision" (*id*.), a tort which the District of Columbia recognizes as formulated in the Second Restatement of Agency:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

3

>> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Tarpeh-Doe v. United States*, 307 U.S.App.D.C. 253, 28 F.3d 120, 123 (D.C. Cir. 1994) (quoting the Restatement (Second) of Agency § 213 (1957)).  As in any negligence action, a plaintiff seeking to establish negligent supervision "bears the burden of presenting evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of."  *Id*.  *See also Ryczek v. Guest Services, Inc.*, 877 F.Supp. 754, 764 (D.D.C. 1995) (same).

To begin with, however, Plaintiff has presented and can present no evidence that, before this event began, MDRB knew that any "security" would be in place for what had been represented to MDRB would be a "Private Party."  MDRB's sworn testimony is exactly to the contrary:  it did not know that any "security" would be present at the event.  (*See* Bhatnagar Cert. at ¶ 5; Travers Cert. at ¶ 5.)  *A fortiori*, MDRB did not "provide[]"(Opp.Mem. at 4) security for this event, Plaintiff's unfounded assertion to the contrary notwithstanding, and MDRB cannot, therefore, be responsible for having supposedly "provided" (*id*.) inadequate security.

Moreover, just as MDRB did not know that any "security" would be present at the event, it did not know, upon seeing people in "SECURITY" tee shirts, for what purpose that "security" was being employed, apparently at the behest of leasor Defendant John Doe, aka "Ben and

4

Reggie." Plaintiff's assertion that "[t]he question of whether or not security was needed was answered by the fact that security was present" (Opp.Mem. at 4) skirts this important point.

Were the law to impose on MDRB a tort duty by means of "an 'increased awareness' that[ MDRB should have had that] some third party's unlawful use of a [weapon] would cause [the Decedent]'s injuries," *Bailey*, 668 A.2d at 819, *based merely on the fact MDRB unexpectedly learned during this event that leasor-supplied* "SECURITY" *was present* (Plaintiff cites no legal authority supporting such a proposition, and MDRB knows of none), nonetheless Plaintiff would have to bear the corresponding burden of establishing both that "SECURITY" was in fact in place that evening for the purpose of locating weapons and that MDRB knew or should have known of that purpose.

In fact, however, MDRB had on several earlier occasions rented its meeting room for paid-admission events at which security personnel, supplied by the leasor, were stationed at the door of meeting room for the purpose of controlling ingress (a) so that only people who had paid the admission charge gained entry and (b) so that those admittees were not carrying items not permitted by the leasor, particularly including beverages which would "compete" with the beverages the leasor was offering to sell inside the gathering room. (Travers Cert. at ¶ 7.)

In this regard, on the evening in question, Stanley Travers—the MDRB employee who had worked with "Ben and Reggie" at the time they rented the meeting room (and who was then told by them that they themselves would set up chairs and tables themselves in the room, which was not uncommon for leasors to do)—was stationed in the Hotel's parking lot opposite from the Hotel's main entrance. (*Id*. at ¶ 8.) His task at that point was to monitor the use of the parking lot, restricting it to overnight guests, until such time as the several tour buses MDRB was

5

expecting had arrived back at the Hotel for the evening. (*Id*.) Mr. Travers performed this function from about 6:30 p.m. until between 10:00 and 11:00 p.m. (*Id*.)

Early on during that period—i.e., between 6:30 and 7:00 p.m.—Mr. Travers saw the "Ben and Reggie" group arriving to set up the room for their event (*id*. at ¶ 9); that group brought in musical equipment and containers of soda pop, the latter ostensibly to be provided and/or sold to the people attending their event (*id*.).

As early as about 8:00 p.m., and although he was on the side of the building opposite from the Hotel's main entrance, Mr. Travers saw young people whom he believed were beginning to arrive for that event. (*Id*. at ¶ 10.)

Not until after his watch in the parking lot—i.e., sometime between 10:00 and 11:00 p.m.—did Mr. Travers first see that people wearing "SECURITY" tee shirts attending the door to the rented meeting room (*id*. at ¶ 11); to Mr. Travers' knowledge, he is the first MDRB employee to have seen those "SECURITY" personnel (*id*.). However, Mr. Travers did not see or hear of the "SECURITY" personnel taking any weapons of any sort from anyone, although he could observe that their screening process would likely have prevented anyone from bringing in any bottled or canned beverages or the like. (*Id*.)

In sum, in this setting, there exists no genuine dispute that MDRB did not know of any specific criminal risk to Farooq nor of any general criminal risk to him or the other attendees of "Ben and Reggie's" event that evening. (*Id*. at ¶ 12.) Therefore, MDRB did not have any independent legal obligation to provide security guards to monitor this event, for crime-prevention purposes or otherwise, or to control who attended it.

Even after MDRB first became aware—during the course of the event itself—that "Ben and Reggie" were apparently providing "SECURITY" personnel regarding their lease of

6

the meeting room, MDRB had no reason to conclude and did not conclude that the event presented any special risk to the attendees. A leasor of the room having "SECURITY" attending the door, to keep out both unauthorized attendees and items like bottled or canned beverages, was not an unprecedented event and did not itself put MDRB on notice of any particular danger or likelihood of criminal activity.

Thus, neither the event itself nor the unexpected presence of "SECURITY" personnel at the door of the meeting room it had rented to "Ben and Reggie" imposed on MDRB any legal duty to guard against criminal activities on its premises. For that reason, Plaintiff's case must fail.

    **B.**    **Even Assuming *Arguendo* A Legal Obligation On MDRB's Part To Supervise Defendant Richard Roe Security, Plaintiff Has No Evidence— Either As To The Applicable Standards Of Care Or Any Supposed Breaches Thereof—Concerning Richard Roe Security's Own Work Or MDRB's Supervision Thereof**

A plaintiff bringing a negligence claim has the burden to establish "the applicable standard of care, a deviation from that standard, and a causal connection between that deviation and the plaintiff's injury." *Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001) ("*Hill*"), *citing Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255 (D.C. 1991).

Regarding that "applicable standard of care" element, "[a] plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Hill*, 779 A.2d at 908, *citing District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000). By contrast, expert testimony is unnecessary when the subject at issue is "within the realm of common knowledge and everyday experience.'" *Hill*, 779 A.2d at 908.

7

Regarding a party's attempting to establish the standard of care that security personnel should exercise at places of large gatherings, District of Columbia courts routinely find expert testimony thereon is necessary. *See*, *e.g.*, *Hill*, 779 A.2d at 910 (expert testimony is necessary to establish the standard of care for crowd control at a large gathering); *Parker v. Grand Hyatt Hotel*, 124 F.Supp.2d 79, 89-90 (D.D.C. 2000) (expert testimony is necessary to establish whether a security personnel and District of Columbia officers breached duty of care in removing an irate patron from a restaurant); *Edwards v. Okie Dokie, Inc.*, Case No. 05-547 (D.D.C. February 6, 2007) ("*Edwards*," attached hereto as Exhibit 2) (expert testimony necessary to determine whether security personnel acted reasonably in using force against patrons at a large nightclub); *Predzin v. DC Arena Limited Partnership*, Case No. 02-9585 (D.D.C. October 7, 2003) ("*Predzin*," attached hereto as Exhibit 3) (expert testimony necessary to determine "*what in particular* the security guards should have done … and of *what particular action or actions* the security guards should have taken to protect the plaintiff" attending a sporting event at the MCI Center (emphasis in original)).

Here, the standard of care Defendant Richard Roe Security should have exercised in the situation at issue—where its employer Defendant John Doe had organized a public dance party—is "beyond the realm of common knowledge," *Hill*, 779 A.2d at 908, assuming *arguendo* that Richard Roe Security was at the event to prevent weapons from entering the meeting room in question.

Because the standard of care that Richard Roe Security should have exercised under the circumstances is beyond the "realm of common knowledge" (*Hill*, 779 A.2d at 908), Plaintiff was required to designate an expert witness to attempt to establish both the standard of care at issue and Plaintiff's assertion that Richard Roe Security in fact failed to meet that standard of

8

care. The fact that the assailant here somehow managed have a knife inside this meeting room does itself not establish a failure to meet the appropriate standard of care, and no jury would properly be permitted to speculate to the contrary. *See*, *e.g.*, *King v. Pagliaro Bros. Stone Co.*, 703 A.2d 1232, 1234 (D.C. 1997) ("This court has often said that '[t]he mere happening of an accident does not constitute proof of negligence.'") (citation omitted).[1]

Here, though, Plaintiff failed to designate an expert witness by the December 8, 2006 deadline therefor or even before the *third* close of all discovery (Docket, 3/9/2007 Minute Entry) on April 5, 2007. *See Edwards*, Exhibit 2 (granting summary judgment on negligence claims where plaintiffs failed to designate an expert to testify to the standard of care required for security personnel at a large nightclub); *Predzin*, Exhibit 3 (granting summary judgment on negligence claims where plaintiff failed to designate an expert witness to testify to standard of care for security personnel at a sporting event). Consequently, Plaintiff cannot sustain her burden of proof even on this one element of her case, still less on whether Defendant Richard Roe Security in fact breached the applicable standard of care.

Likewise, Plaintiff has no expert evidence regarding the applicable standard of care for any person or entity regarding supervision of security guards under these circumstances, nor has Plaintiff even suggested—still less actually provided—any evidence that MDRB was aware of any history of inadequate or dangerous security work by "Richard Roe Security." As a result, Plaintiff is unable to make any showing that MDRB knew or should have known that Richard Roe Security was "behaving in a dangerous or otherwise incompetent manner," *Brown v.*

---

[1] For example, the assailant might have secreted a weapon into the room before the event began, in which case expert testimony might well conclude that no reasonable security effort would have prevented the incident.

9

*Argenbright Security, Inc.*, 782 A.2d 752, 760 (D.C. 2001) (citation omitted), on the night in question, and, relatedly, Plaintiff can make no showing that MDRB, with such actual or constructive knowledge of that behavior, failed to meet any standard of care applicable to MDRB in this situation:

> Here, the plaintiff has failed to offer any evidence that defendant[ hotel] Hilton knew or should have known that Carley conducted unreasonable investigations in the past. All the plaintiff has done is proffer conclusory allegations on the subject, which are insufficient to defeat a summary judgment motion. *See Greene*[ *v. Dalton*, 334 U.S.App.D.C. 92, 164 F.3d 671, 675 (D.C. Cir. 1999)] (stating that a non-moving party may not rely solely on mere conclusory allegations to defeat a summary judgment motion). Therefore, because the plaintiff has failed to present any evidence that Hilton knew or should have known that Carley "behaved in a dangerous or otherwise incompetent manner" and that with this knowledge Hilton either failed to supervise Carley adequately or retained him as a supervisor, the Court must also grant the defendants summary judgment on this[ negligent supervision] claim.

*Sokos v. Hilton Hotels Corp.*, 283 F.Supp.2d 42, 46 (D.D.C. 2003).

In sum, given the distinct paucity of information available regarding the yet-unserved Defendant John Doe and the yet-unserved Defendant Richard Roe Security, it is simply impossible for Plaintiff to establish (a) precisely what security procedures Richard Roe Security was in fact using and thus (b) whether those procedures were legally inadequate on this occasion and thus (c) whether MDRB could even possibly have been aware—especially in light of this first-ever encounter it had with "Richard Roe Security"—as to whether Richard Roe Security was in fact performing legally inadequate security procedures.  Plaintiff would have to be able to establish all such factual elements in its favor before further proving that MDRB was negligent under then-applicable—but, as discussed above, yet-unidentified—legal standards of care.  For these reasons, Plaintiff's case fails as a matter of law.

## III. CONCLUSION

Travis Littlejohn's tragic attack on Nadir Farooq was, as a matter of law, not foreseeable by MDRB. Moreover, even assuming MDRB somehow owed a duty of supervision as to the work of Defendant Richard Roe Security, Plaintiff—as a matter of fact and law—cannot establish any applicable standard of care as to either the alleged security duties of Richard Roe Security or the alleged supervisory duties of MDRB, still less can she establish reaches of both such standards of care. As a result, and as a matter of law, Plaintiff cannot make the showings required under District of Columbia law concerning MDRB's alleged liability for the stabbing of the Decedent. Accordingly, MDRB is entitled to summary judgment.

        Respectfully submitted,

        /s/ Paul A. Fitzsimmons
        _____
        Thomas S. Schaufelberger, DC Bar No. 371934
        Paul A. Fitzsimmons, DC Bar No. 444829
        SAUL EWING LLP
        2600 Virginia Avenue, N.W.
        The Watergate—Suite 1000
        Washington, D.C. 20037
        Telephone: (202) 333-8800

        Counsel for Defendant MDRB Corporation

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that, on this 21st day of May 2007, a copy of the foregoing Reply Memorandum In Support Of Motion For Summary Judgment Of Defendant MDRB Corporation was served via electronic filing upon:

    Gregory L. Lattimer, Esq.
    1100 H Street, N.W.
    Suite 920
    Washington, D.C.  20005

          /s/ Paul A. Fitzsimmons
         _____
           Paul A. Fitzsimmons