# EXHIBIT 3

Case 1:06-cv-00211-RMC   Document 18-4   Filed 05/21/2007   Page 1 of 9

 

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DAVID H. PREDZIN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DC ARENA LIMITED PARTNERSHIP, et al., )<br>)<br>Defendants. ) | Civil Action No. 02CA 9582<br>Civil Calendar 7<br>Judge Kravitz |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff alleges that he attended a Washington Capitals hockey game at the MCI Center on November 17, 1999 and that he was injured when another fan named Matthew Tedesch assaulted him inside the arena following the game. The plaintiff alleges that he repeatedly brought Tedesch's excessive alcohol consumption and rowdy and threatening conduct to the attention of the arena's security staff during the game but that the security staff failed to take sufficient action to protect him.

The plaintiff has brought negligence claims against several entities that own, manage, and operate the MCI Center. He alleges that those entities -- the defendants herein -- were negligent in the hiring, training, and supervision of the security personnel and alcoholic beverage vendors on duty on November 17, 1999. He alleges further that the defendants, acting through their agents -- the security staff -- were negligent in failing to take sufficient action to protect him from the known danger posed by Tedesch.[1]

---

[1] The plaintiff also has sought to bring claims of assault and battery against Tedesch and negligence against Contemporary Services Corporation, the security company whose employees were on duty on November 17, 1999. In written orders dated January 2, 2003 and May 12, 2003, respectively, the Court dismissed the plaintiff's claims against Tedesch and Contemporary Services Corporation on statute of limitations grounds.

 

The case is presently before the Court on the defendants' motion for summary judgment. Among other contentions,[2] the defendants assert that the plaintiff's negligence claims fail as a matter of law because the plaintiff has not identified an expert witness to testify as to the prevailing standard of care.

The Court has considered the defendants' motion and the plaintiff's opposition, as well as the exhibits appended to the parties' briefs and the entire record of the case. For the reasons set forth herein, the Court agrees with the defendants that expert testimony is necessary under the circumstances presented here to establish the prevailing standard of care. Because the plaintiff has named no such expert, the Court concludes that the defendants are entitled as a matter of law to the entry of judgment in their favor.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate, based upon the pleadings, discovery, and any affidavits or other materials submitted, that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law. *Grant v. May Department Stores Co.*, 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56(c). A trial court considering a motion for summary judgment must view the pleadings, discovery materials, and affidavits or other

---

[2] The defendants also contend that they are entitled to summary judgment on all of the negligence theories advanced by the plaintiff due to the plaintiff's failure to produce sufficient evidence to satisfy the "heightened foreseeability" standard required for negligence claims arising from the criminal acts of third parties. *See Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997). The defendants contend further that they are entitled to summary judgment on the plaintiff's claim that they were negligent in selling alcohol to an obviously intoxicated Tedesch because the plaintiff has failed to present sufficient evidence that Tedesch purchased any alcohol on the premises that evening. Finally, the defendants contend that they are entitled to summary judgment on the plaintiff's claim for punitive damages contained within the original complaint. The plaintiff has withdrawn his claim for punitive damages, and the Court is inclined to agree with the defendants that there is insufficient evidence of Tedesch's purchase of alcohol on the premises to enable the plaintiff to get to the jury on any negligence theory arising therefrom. Nevertheless, the Court need not reach any of these additional contentions in light of its conclusion that expert testimony is required to establish the prevailing standard of care as to all of the plaintiff's claims of negligence.

materials in the light most favorable to the non-moving party and may grant the motion only if a reasonable jury, having drawn all reasonable inferences in favor of the non-moving party, could not find for the non-moving party based upon the evidence in the record. *Grant*, 786 A.2d at 583 (citing *Nader v. De Toledano*, 408 A.2d 31, 42 (D.C. 1979)); *Bailey v. District of Columbia*, 668 A.2d 812, 816 (D.C. 1995). The moving party has the initial burden of proving that there is no issue of material fact in genuine dispute. If the moving party carries its initial burden, then the non-moving party assumes the burden of establishing that there is an issue of material fact in genuine dispute. *Grant*, 786 A.2d at 593 (citing *O'Donnell v. Associated Gen. Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994)).

### Analysis

The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the defendant's deviation from the standard of care and the plaintiff's injury. *Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255 (D.C. 1991). With regard to the first element, "[a] plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000). Expert testimony is not required if the subject in question falls "within the realm of common knowledge and everyday experience." *Id.*

As our Court of Appeals has explicitly recognized, the trend over the past two decades has been to broaden the category of situations in which expert testimony is

required and to limit the number of cases that fall within the "common knowledge" exception. *District of Columbia v. Hampton*, 666 A.2d 30, 35-36 (D.C. 1995). Indeed, the Court of Appeals has required expert testimony on a wide variety of matters that arise frequently in everyday life and with which the public is generally familiar. *See, e.g., Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906 (D.C. 2001) (crowd control at large church gathering); *Katkish v. District of Columbia*, 763 A.2d 703 (D.C. 2000) (level of danger posed by leaning tree); *Hampton*, 666 A.2d 30 (social workers' selection and supervision of foster parents); *Messina v. District of Columbia*, 663 A.2d 535 (D.C. 1995) (amount of cushioning necessary beneath playground equipment); *District of Columbia v. Carmichael*, 577 A.2d 312 (D.C. 1990) (protection of prison inmates from injury by other prisoners); *Lenkin-N Limited Partnership v. Nace*, 568 A.2d 474 (D.C. 1990) (reasonableness of delay on construction project); *District of Columbia v. Freeman*, 477 A.2d 713 (D.C. 1984) (sufficiency of pedestrian safety measures at intersection).

Only where an issue involves neither a technical subject nor the exercise of sophisticated professional judgment has the Court of Appeals held that expert testimony is unnecessary to establish the prevailing standard of care. *Hampton*, 666 A.2d at 36. Examples of the limited circumstances held to fall within the "common knowledge" exception include an attorney who failed to put a residuary clause requested by his client in the client's will, *Hamilton v. Needham*, 519 A.2d 172 (D.C. 1986), a 93 year old woman who fell out of her hospital bed while unattended, *Washington Hospital Center v. Martin*, 454 A.2d 306 (D.C. 1982), and a 5 year old child who lost her thumb on a playground slide that was missing a handrail and, contrary to the manufacturer's

instructions, had uncapped and exposed supporting pipes, *District of Columbia v. Shannon*, 696 A.2d 1359 (D.C. 1997).

Against this extensive background of controlling case law, it is clear that the plaintiff's claims of negligent hiring, training, and supervision of the security personnel and alcoholic beverage vendors on duty on November 17, 1999 require expert testimony to establish the prevailing standard of care. Although security guards and vendors of alcoholic beverages in public settings are familiar to most of us, the hiring, training, and supervision of such persons -- particularly in the context of large sports arenas -- are subjects that involve significant technical expertise and professional judgment well beyond the common knowledge of the average lay person.

More difficult is the question of whether expert testimony is required to establish the prevailing standard of care for the security personnel who responded to the plaintiff's requests for help during the game. The plaintiff alleges, in this regard, that the security guards were negligent in failing to take appropriate action to protect him from Tedesch once they were on notice that Tedesch was intoxicated and acting toward him in an abusive and threatening manner.

It is readily apparent that the security guards had a duty to do *something* in response to the plaintiff's complaints about Tedesch. Put another way, it is within the everyday understanding of average lay people that the security guards had a duty under the circumstances to monitor the situation and to investigate the plaintiff's complaints to determine what actions, if any, they should take to protect the plaintiff and others in the arena.

In the Court's view, however, the questions of *what in particular* the security guards should have done to monitor and investigate the plaintiff's complaints -- and of *what particular action or actions* the security guards should have taken to protect the plaintiff during and after their investigation -- are far more complex. These questions can be reliably answered only with technical knowledge of the security business and with a familiarity with the exercise of professional judgment by trained security officials -- matters, in the Court's view, that fall outside the everyday experiences and understanding of average lay people. One can easily think of a whole range of actions that the security guards could have taken -- from simply monitoring the situation from a distance, to questioning Tedesch and/or others in the area, to calling in the police, to confiscating Tedesch's alcoholic beverages, to moving some or all of the parties to different locations within the arena, to forcibly removing Tedesch from the arena during the game, to escorting the parties in separate directions after the game. Yet to determine in any reliable way which of these options were professionally appropriate under the circumstances, one must be familiar with and understand the many considerations that are to guide security guards' discretionary decisions as to the scope of their investigations and the appropriate protective actions to be taken in light of their findings. Without the assistance of expert testimony concerning the proper factors to be considered in the exercise of professional discretion in these areas, the jury would be left to speculate as to the range of appropriate responses by the security guards who responded to the plaintiff's complaints. A prima facie case of negligence cannot rest upon such speculation as to the prevailing standard of care.

 

The plaintiff has not filed a Rule 26(b)(4) statement identifying an expert prepared to establish the standard of care on any of the negligence theories alleged against the defendants herein. The Court therefore concludes that the defendants are entitled as a matter of law to the entry of judgment in their favor.

Accordingly, it is this 7 day of October 2003

ORDERED that the defendants' motion is GRANTED and that summary judgment is hereby entered in favor of the defendants.

Neal E. Kravitz, Associate Judge
(Signed in Chambers)

DOCKETED OCT 8 2003

MAILED OCT 8 2003

Copies to:

Bruce D. White, Esq.
10533 Main Street
Fairfax, VA 22030

Robert M. Cooper, Jr., Esq.
9255 Lee Avenue
Manassas, VA 20110-5514

Jonathan Agin, Esq.
1341 G Street, NW
Suite 500
Washington, DC 20005




SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DAVID H. PREDZIN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DC ARENA LIMITED PARTNERSHIP, et al., )<br>)<br>Defendants. ) | Civil Action No. 02CA 9582<br>Civil Calendar 7<br>Judge Kravitz |

### ORDER OF JUDGMENT

In light of the Court's order dated January 2, 2003 granting defendant Matthew Tedesch's motion to dismiss, the Court's order dated May 12, 2003 granting defendant Contemporary Service Corporation's motion to dismiss, and the Court's order dated October 7, 2003 granting the remaining defendants' motion for summary judgment, it is this __7__ day of October 2003

ORDERED that a FINAL JUDGMENT is hereby entered in favor of all defendants.

Neal E. Kravitz, Associate Judge
(Signed in Chambers)

DOCKETED OCT 8 2003
MAILED OCT 8 2003

Copies to:

Bruce D. White, Esq.
10533 Main Street
Fairfax, VA  22030

Robert M. Cooper, Jr., Esq.
9255 Lee Avenue
Manassas, VA  20110-5514

Jonathan Agin, Esq.
1341 G Street, NW
Suite 500
Washington, DC  20005